Morning. Would you like to reserve some time? Yes. Six minutes. Six minutes. Okay. Quick question. There's three related appeals. We want to handle them all in one hour, right? Yes. They're closely related enough that we're just going to give the 15 minutes for all three appeals. Okay. That's great. Thank you. So, this case about the Chapter 7 trustee's compensation and his professionals, it's about preserving meaningful limits to protect the estate. Because the code and the law are designed to protect against the exact outcome in this case, which is a case that would have been a 100% payout to all creditors and a surplus to the debtor, having nearly the entire state eaten up by professionals and the trustee, double and triple billing for the same tasks, pursuing meritless litigation, and taking actions that resulted in no benefit to the estate and that could never have benefited the estate. So, this court can reverse on several grounds. The first is the failure to apply the correct legal standards. The bankruptcy court didn't address five of the six factors under Section 330 about reasonableness, and the court didn't address the gatekeeping requirement that fees are not compensable unless they are reasonably likely to benefit the estate. So, counsel, that argument would apply to the attorney for the trustee's fees. What about the statutory fees for the trustee? It also applies and it's not inapplicable. However, this panel has ruled in the Salgado-Nava case that the trustee's commission is to be treated as a commission unless there's extraordinary circumstances. So, this case is about extraordinary circumstances, which is that the trustee violated his duties to the estate and to the debtor in a surplus estate by eating up those fees. So, our argument is that the— How do we know it was a surplus estate? I mean, there was this proof of claim that would have rendered it a non-surplus estate, right? No. The original claim from my client, the ex-wife, for about $80,000, there was sufficient funds in the estate to pay her entire claim plus the other four claims and have a surplus of about $17,000 to the debtor. Well, that assumes zero administrative expenses, right? No, that assumes the trustee gets his commission, his full commission. This was a simple case. It was just selling one asset, which was the house, which my client lived in, and she bought the debtor's half of the house pursuant to the settlement agreement. That was negotiated with a few e-mails and so very quick. It didn't require any legal counsel. It didn't require anything. And so he just liquidated the one asset. There was enough money to pay everybody, but the trustee and his professionals decided to pursue this litigation and delegate his responsibility. You're saying that trustees should have handled this case without counsel, without an accountant? Well, he would need an accountant to do the tax returns for the estate. So we are not objecting to those fees. It's about $4,000, I believe, for the accountant to do that because that's reasonable, necessary, of course. As far as an attorney, it might not be unreasonable to have a higher net attorney to do a few things, maybe the motion to approve the sale or something. It's not necessary. Trustees do it without that. But it was definitely not necessary to do the vast majority of the work that was done. Where do you think the cutoff is? Where should counsel have stopped or where should the trustee have told counsel to stop or both? Well, there's a few points. First is the issue of double and triple billing. So he should not have let his – he should not have delegated his jobs, the trustee's jobs, to investigate the claims and the estate and the assets to his counsel. And the billing records of counsel show that they were doing all the work that the trustee is supposed to do, the basic first-round investigation and asset gathering or document gathering. And he paid the accountant for the same thing. And he took his own commission for doing those same things. So delegation, that he should have stopped. As far as the objection to the claim, it should have never been filed because it only succeeded on one of the several categories. And that was kind of a long-shot legal argument about interpreting a family court order. It would be maybe not unreasonable to object on that ground alone and spend maybe a few thousand dollars to see how it goes. That might not be unreasonable. But that's not what happened. They objected to all the categories of the claims, well, four out of the six. And there was no conceivable basis to win three of the four they objected to. There's no evidence on the record. It's all undisputed facts, nothing. The expert's report doesn't address anything except to say, well, there's not enough evidence for me to make a calculation, basically. So they shouldn't have filed the claim objection at all. If they did, they should have only objected maybe to the one claim about child support based on the legal argument only about interpreting family court orders. So that's what should have happened, I think, in a perfect world. However, in this case, we have what's interesting. At the first hearing on the claim objection, counsel for the trustee and the bankruptcy court openly acknowledged that further litigating this claim objection was no benefit to the estate, expressed acknowledgments on the record that pursuing the litigation didn't benefit anyone. The bankruptcy court ordered the parties to go to mediation and settle it. The history of settlement offers in this case is extremely important. It shows that the trustee was intentionally defeating settlement to turn fees. That's what they show. Because right after the first hearing, a settlement offer was made by the trustee, which is basically to allow the rest of the claim as is, basically to stop. My client tried to accept that, and she wouldn't allow acceptance of that offer. So our client made the same offer back. It was rejected. But the case settled, I think two years later after all the appeals, for basically the same thing. So that shows that there was no intent to reasonably litigate the case. So to answer your question, when should the trustee have drawn the line, it is after they all admitted on the record that there was no purpose to be served further litigating the case. If you have water, we can stop the clock real quick and let you get some water. Thank you. This case is unique in the sense that all the parties agreed on the most important facts in the case, that from the first hearing on the claim objection, no further purpose was served by litigating the claim, none. In fact, everyone admitted it harmed the estate. The bankruptcy court admitted that expressly. The counsel for the trustee admitted it expressly. Everyone agreed. But the problem is litigation didn't stop. They filed an abstention motion instead of just settling or dropping it. They defended the appeals, which they didn't have to do, all of those things. So the only time they finally stopped was when they ran out of money. In fact, it's alleged in the papers that they incur, I think, something like $130,000 in fees, but the trustee's counsel claims to voluntarily have waived the fees for the Ninth Circuit Appeals, so that leaves enough for the trustee to get his $10,000 and then $14,000 to one creditor. So basically this case is they turned a 100% surplus case into basically 0% to four creditors and only 20% to one creditor. The extraordinary circumstances test in the Salgo-Nevada case is very important here because the trustee's actions violate his statutory duties to administer the estate expeditiously because they just dragged it out. It's been now, I think, four years. Creditors are going to get nothing, or depending on how this appeal comes out, they will get paid, but four years late. So everybody was harmed, and so the failure to – well, the trustee's in control of the settlement offers. In the litigation, he's also in control of whether you – I don't know how much control – well, there's no evidence on the record of how much control he exerted, but failing to supervise counsel. But really the question here, because the failure to apply the legal standards mandates reversal with the de novo standards because they didn't address the reasonable likelihood to benefit the estate of any of the litigation. Because it was a surplus estate, if the claim was reduced, that would only benefit the debtor by increasing his surplus. That's not the estate, so none of that work is compensable at all. So we're requesting that not only does this court vacate the orders, but determine the amount to be paid by either disallowing all compensation or determining the allowed amounts because the triple and double billing is a serious issue. Because there's no dispute that some work that benefited the estate was done. The property was sold, things like that. The debtor's homestead exemption was denied, so some work was done. If you're up to six minutes, Mark, I just want to point that out to you. Yes, thank you. So this court can decide who should get paid how much so there's not triple billing. That would be asking us to make findings of fact. Yes. We don't do that. Well, the record is sufficiently clear. This court can make a ruling on the record in front of it. So it's not so much findings of fact as, well, we think all the compensation should be denied because of the failure to meet their burden. Nobody submitted declarations that addressed the standards or any of that. All right. Go ahead. Wouldn't it be more appropriate for us to remand for the trial court to make those decisions, to look at the? Normally, yes, but here the problem is there's no record of facts, admissible evidence to a rule on allowance of any fees. No trustee compensation can be allowed because there's no declaration, no time records, no nothing. It's two pages. The accountant, same thing. There's no admissible evidence. There's no declaration, so his time records are inadmissible hearsay. So there's no grounds to award any fees to the trustee under those extraordinary circumstances if this court finds extraordinary circumstances. And then for the trustee's attorney, there are time records, but they're uncategorized under the guidelines. So the court could do that, but it's not necessary. All right. Thank you. Good morning. Good morning, Your Honors. Gene Barnier for the Appellees, the Chapter 7 trustee, Timothy Hoffman, McConaughey and Barnier, his attorneys in this matter, and Beicecki and Crom, who were the accountants in this matter. There's only one issue before this Court, and that was did Judge Blumensteel, was she correct in awarding the administrative fees? That's her job, and she did it, and that answer is yes. Now, a review of the bankruptcy court's decision to award administrative fees. Was there a mistake of law, though, for the judge? The bankruptcy judge said she was required to defer to the business judgment. Is the business judgment a standard that applies to fee applications, or is that just a standard that should be applied to whether or not you sell a house for a specific price? I believe, Your Honor, you're taking Judge Blumensteel's comment slightly out of context, what she was referring to, because as you've listened to the appellant attack the trustee's decision-making, that was what her reference was to. I am not going to second-guess what the trustee did rather than selling the house as business judgment. And to be honest, as Judge Jaroslawski used to say, no good deed goes unpunished when we chose to sell the house, allowing the ex-wife and her two children to remain in the home rather than selling it. As the — as you are very well aware, the trustee's fees, based on a statutory interpretation, if we had sold the house to someone else, would have been much greater in this case. So, no, I do not believe that that is an essential part, because if you read Judge Blumensteel's decision, she identifies Section 330 very correctly and refers to elements within it. Specifically, what the appellant has been unable to do is to point to any of Judge Blumensteel's findings that were illogical, implausible, or without support in the record. Let me ask you about one task that — that stands out to me, and that is the filing of the motion to abstain. Why was that necessary? Why not just withdraw the rest of the claim objection? Because, Your Honor, at that point, the — we looked at this case, and this is a — I haven't been — I've been representing Chapter 7 trustees for 20 years. My partner, now deceased, for 40 years. We had this situation where we knew we had funds left over. We did not see the benefit to litigate. We — so in that case, you're right. We could have said, turn it over to the debtor. This is what we're going to — close it out. Withdraw the claim objection. And withdraw it and go ahead and do it. But what we saw was, due to the litiginous, Ms. Shea, that it was smarter to say, we're going to abstain the bankruptcy courts out, so that we no longer have — she no longer has jurisdiction here, and then let them go back to Marin Superior Court, a place they're both very familiar with, the debtor and his ex-wife, and allow that money to be figured out. But wouldn't a simple withdrawal of the claim objection done the same thing? And couldn't you have basically done that with — maybe even without bankruptcy court approval? Certainly without a motion. Well, that definitely was a possibility. When we weighed out our offices in consultation with the trustee, went through, and also given Judge Blumensteel's instructions that this should have been settled, and it was not. And I need to address that point, why it wasn't settled. Given my 20 years and your experience, you know that bankruptcy trustees generally settle. Our headache was that we had an insistence from Ms. Shea throughout all the settlement discussions that the attorney's fees that she had accrued be included in her claim. And we read the decision from the district court, we read Judge Blumensteel's on that, and they said, no, it cannot be included. So in good faith, the trustee believed he could not include that in it. So could that have been a possibility? You're right, Your Honor. Maybe we should have done that. But we did not. We chose to motion to abstain. It was not that costly to do. What the costs became, and what Ms. Shea and her attorney continue to do, is take comments out of context. And Judge Blumensteel says that. She said, you are not — that is exactly wrong of what we said. It was Ms. Shea who said, let's go appeal this. In our expert opinion, excuse me, in his — in the Bicecki-Crum opinion, if you read that, he believes that the debtor owed, at most, $1,000 based on it. And one of the confusion comes about is that Ms. Shea did not quite understand the MOU, and you, I'm sure, are all familiar with them in terms of payments. Why does the trustee have to get involved in the fight between the ex-spouses? That's what we were trying not to do. I mean, when she files a claim — You withdraw the objection to the claim. That's the way out. That was not brought up, Your Honor. Judge Blumensteel didn't suggest it. The trustee did not consider it. Our offices didn't consider it. And that, as a matter of fact, we did not do that. In hindsight, maybe, but — In hindsight, it's always 2020. I know. Perhaps that would have been the way to do it. But withdrawal from claim, this issue still would have been there. They wouldn't have gone away. And this way, there was money that was sent. We're in Superior. Go figure this out. Our opinion was that the debtor only owed, at most, $1,000 to Ms. Shea based on our accountant's findings. But then you're spending the creditor's money, granted it's Ms. Shea's money, to litigate something that's only going to benefit the debtor. I'm sorry, Your Honor. I'm not quite — When you're continuing with this claim litigation, you are accruing attorney's fees, which are coming directly out of the pocket of Ms. Shea or maybe Ms. Shea and the debtor. You're doing it — there's a lot of sayings. You have to do it for the benefit of the debtor. But how can you spend creditor's money for the benefit of the debtor? Creditors get paid first. You're right, Your Honor, and she should have. But instead, when we said, okay, we're going to stop litigation, which is what Judge Blumenstiel said to do, our offices said to do, and instead of saying, okay, we will do that, we have appeals. And they kept going, and they did not stop. Now, under the — Mr. Shea was not — was Mr. Shea at the table of the mediation? Ms. Shea? I'm sorry. She's — no, she — oh, yeah, I'm sorry. In front of Judge Hammond — I'm sorry. I'm sorry. The ex-husband. Ex-husband. No, he was not. He was not a part of that part. He was not a party to it. And that's not what Judge Blumenstiel ordered, either. She ordered just the two parties in to settle — Maybe, thinking out loud, maybe that's the flaw, right? The real contesting parties weren't there. Maybe that's the — Your Honor, I'm always — 20-20 hindsight. No, no, no, I appreciate that. And I'm always uncomfortable discussing settlement in front of judges. I just — Oh, no, I'm with you. I'm with you. But it's been raised, so — and I understand regarding fees, I think the Ninth Circuit, it's a little wishy-washy, in my opinion, on when it can be done. We tried to do that, and I sent that settlement offer to the debtor and his counsel, and they rejected it. So at that point, the trustee had no choice but to go further. Do I think this was a waste of colossal time on the Court's part and everyone's part? Yeah, I do. I don't deny that. But I think, as Judge Blumenstiel points out, the burden is on Ms. Shea for refusing to say, okay, I stop. Instead, she keeps going. What the papers suggest from the appellant — excuse me, yes, from the appellant is that if a trustee's pushed forward and said, oh, it's going to cost too much to litigate, we cave. You, I'm sure, have lots of Chapter 7 attorneys. That was not our office's position. We actually ended up doing the work because we believed it was right. So in hindsight, could we have done those things? Perhaps. But based on the accountant's report, which was never rebutted, which Judge Blumenstiel relied on, we had no choice but to go forward because of the acts of the appellant. If you have no further questions, I'll rest. Thank you very much. Okay, Mr. Christensen, you've got four and a half minutes. Thank you. A couple of points. The counsel's description of the settlement offer is not accurate based on the record. We did not reject a settlement offer, the original one, after the hearing for the amount, which is to allow the rest of the claim. So the first settlement offer they made, we tried to accept it once we could figure out what it was because it wasn't clear what it was and there was only two days to accept. By the time we got clarification from them, we tried to accept it. She said no. So that was refused by the trustee. We made an identical counteroffer. That was rejected by the trustee. So it was not, settlement was not frustrated on our end, which our record is very thorough, which shows that. Second, about the motion to abstain, counsel said that they did that because it wasn't that expensive. Based on my review, it's over $30,000 is what they spent on it. Well, what they billed the estate and they claimed they waived another amount similar to that. The expert report was rebutted, not unrebutted, and there's no evidence that it was relied on by the Bankruptcy Court because the only ruling by the Bankruptcy Court was an issue of law interpreting family court orders, which was not addressed by the expert. So it was ‑‑ I think she said at the fee hearing, though, that she found it helpful and she relied on it. Well, I do recognize that, but the record does not support that finding. And so one of our arguments here is that the record does not support the factual findings. And even if it was found helpful ‑‑ Well, she could rely on it without making a finding of fact about it, right? Sure. That's possible, yes. But that's really ‑‑ that's not really relevant to the legal standard here, which is whether it's compensable. The work for the report is not compensable because it was not reasonably likely to benefit the estate. It was not admissible. All it said was basically there's not enough evidence for me to make calculations. That's basically what it said. And so it wouldn't have been admissible at trial. So we objected to it, but it never came to ‑‑ the judge never ruled on it because there was never an evidentiary hearing set. So also the argument that our client, the creditor, was overly litigious and drove up the fees, again, that is not the legal standard. It doesn't matter how litigious any party is. The trustees got a duty to minimize expenses to benefit the estate. All Chapter 7 trustees know to not spend more money than what they could recover. Yeah. Go ahead. I changed my mind.  So what we would ‑‑ I mean, this case is really about ‑‑ well, it's about not ‑‑ I mean, enforcing the legal standards for what is reasonably likely to benefit the estate. That's the critical issue here. There was no findings made on that. It was not addressed. But even if it were to be addressed on remand, the evidence plainly shows that it could never have benefited the estate in a surplus estate. So ‑‑ So if there's always a surplus estate, does that mean ‑‑ I mean, you look at an estate at the beginning, and it's possibly surplus, right? Does the trustee just roll over at that point? Goes, oh, look, there's plenty of money. We don't look into anything? Well, it's on a case‑by‑case basis, certainly. But, yes, I ‑‑ well, the trustee's duties and what he's professionally compensated for are not the same thing. So the trustee has argued it's his duty to investigate and object to claims. Sure, that's fine. That doesn't mean his counsel gets compensated from the estate to object to those claims. So whether they object or not, they can't get compensated if it's a surplus estate, because they're only going to benefit the debtor. It's hard for me to accept the proposition that a trustee has to either do legal work on him or her own, when a trustee is not required to be a lawyer, or hire a lawyer who will do it pro bono. I mean, I can't do all that. Well, it's not asking them to do it pro bono, but it's just keeping in mind the practicality. This is all very practical. Sure. You know, we want people to get their money as fast as they can. So if there's a legitimate reason to object that's going to serve the greater purpose, then fine. But, you know, how many Chapter 7 trustees send out demand letters to recover preferences, and they just don't follow up because the amount — it's a slam-dunk recovery, but for $5,000 or $10,000 it's going to cost them more in legal fees to get it back. So they don't litigate meritorious claims because it's too expensive. It's a practical analysis, and that's what's happening here. So what we would like is — I mean, reversal we think is mandatory, but we think it should be with an order that no compensation is allowed to the accountant because there's no substantial — there's no evidence at all, and they can't admit new evidence down on remand. And to the trustee under the extraordinary circumstances test, extraordinary circumstances exist here. So he has — his fees have to be analyzed under the legal standards, and there's no evidence to do that. And for the trustee's attorney's fees, the — on remand, they should be limited to review of only those fees that are not for the claim of objection because that's not compensable, and not compensable for any of the hours that she spent doing the trustee's job, like investigating, but only a very narrow category of things where it's compensable. Thank you very much. Thank you. The matter is submitted. We'll be making a written decision. Thank you. Thank you.
judges: FARIS, BRAND, and CORBIT